2014 SEP -2 AM 9: 14


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| RACE TRACK, LLC, a Washington limited liability company; PACIFIC GRAND PRIX, LLC, a Washington limited liability company; and PACIFIC RIM PERFORMANCE, INC. d/b/a PROFORMANCE RACING SCHOOL, a Washington corporation,<br><br>    Appellants,<br><br>    v.<br><br>KING COUNTY, a political subdivision of Washington State,<br><br>    Respondent. | No. 70553-9-I<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED<br><br>FILED: <u>September 2, 2014</u> |

Cox, J. — Activities conducted at Pacific Raceways in King County must comply with the terms and conditions of the conditional use permit (CUP) for that property. Pursuant to the County's zoning ordinances, the King County Department of Development and Environmental Services (DDES) issued a notice of code violation and order of abatement based on alleged violations of the CUP. A hearing examiner denied a timely appeal of this notice and order. And a superior court judge substantially affirmed the decision of the hearing examiner in this Land Use Petition Act (LUPA) proceeding that followed.

The owners of Pacific Raceways and the operators of businesses on that property substantially fail to sustain their burdens under LUPA to show that the

hearing examiner's decision was incorrect. We affirm in part, reverse in part, and remand to the hearing examiner to consider certain modifications to his decision.

Race Track LLC owns the property known as Pacific Raceways, a vehicle-related sports and recreation facility. Race Track leases its facilities, including the road course, drag strip, and kart track, to Pacific Grand Prix LLC (PGP) and Pacific Rim ProFormance Inc. (ProFormance). PGP is primarily engaged in shift kart racing. ProFormance Racing School provides high performance driving instruction. We refer to Race Track LLC, Pacific Grand Prix LLC, and Pacific Rim ProFormance Inc. collectively as "Race Track and Lessees."

There is a history of ownership changes, changed uses of the property, and litigation that we need not describe in detail in this overview. It is sufficient to say that a CUP for this property was originally issued on June 27, 1972, affirmed on February 26, 1982 following a 1981 modification, and reinstated on April 30, 1984 following a procedural matter that we need not describe further. The current CUP is based on the April 30, 1984 reinstatement.

The CUP Conditions that are relevant to this appeal are:

1. The hours of tract operation shall be limited to 9:00 a.m. to 5:30 p.m., for both testing and racing with the following exceptions:

a. [Pacific Raceways] will be closed to all race testing and racing on Monday and Tuesday year-round, provided that these days may be used for racing when a rained out event could not be scheduled for the following weekend, or when a holiday which has a major event associated within it falls on a Monday or Tuesday. Race testing is not meant to exclude police and emergency vehicle testing and training, or other non-race related testing functions that are quiet, non-impacting.

2

b. [Pacific Raceways] shall provide a minimum of one quiet weekend day (Saturday or Sunday) per month during the May through September racing season. [Pacific Raceways] shall notify Building and Land Development in writing of the five designated quiet days prior to May 1st each year. [Pacific Raceways] should notify interested community representatives in the interest of community relations.

....

3. This permit and the conditions imposed herein authorize this use on this property and shall be binding on any future owners or operators of this facility, as well as the current parties.[1]

In 2003, Race Track and PGP sought to relocate the "go cart track" on the property. They asserted that the request to move the track was not a change in use or modification of the CUP conditions that would trigger the need for an amended CUP. DDES agreed that the request would be acted upon as a grading permit application. The new track opened in June 2009.

In recent years, physical changes to the subject property as well as use and equipment changes for activities on the property resulted in a "new wave of complaints" to the County about the race track from surrounding community members. In January 2011, the County issued a notice of violation and order of abatement (Notice and Order).[2] The Notice and Order found that Race Track and Lessees violated conditions of the CUP and the King County Code. It listed the following violations:

1. Failure to comply with the conditions of King County Conditional Use (CUP) Permit A-71-0-81, April 30, 1984 Rules and

---

[1] Administrative Record/SC at 20.

[2] SC at 235-37.

3

Procedures, and violation of Sections 21A.02.040(A), 21A.08.100, and 21A.42.190(A), of King County Code (K.C.C.). Specifically:

A. Use of primary Race Track for race-related functions on required quiet days in violation of permit conditions 1A and B, including but not limited to operation of ProFormance Racing School and use of the track by private vehicles for "lapping". DDES alleges that Race Track LLC knowingly permits uses on required quiet days which are race-related, are not quiet, and are not "non-impacting" in violation of the plain language of [the CUP].

B. Use of shift kart track by vehicles other than shift karts, including but not limited to motorcycles and street legal automobiles in violation of permit condition 15 requiring all improvements and uses to be conducted in accordance with the pre-March 31, 1984 plot plan.

. . . .[3]

It ordered the following abatement to bring the property into compliance:

1. Comply with all conditions of [the CUP] including:

A. Cease all racing and performance driving school operations and any other race-related functions, including any and all racing, lapping, or similar uses of private vehicles on required quiet days by February 21, 2011.

B. Cease all non-shift kart use of the shift kart track by February 21, 2011.

. . . .[4]

Race Track and Lessees timely appealed the Notice and Order. After considering over 140 exhibits and receiving evidence from 24 witnesses over 9 days, a hearing examiner denied the appeals. He also modified the Notice and Order in a way that we describe in more detail later in this opinion.

---

[3] Id. at 236.

[4] Id.

Race Track and Lessees timely commenced this LUPA proceeding. The superior court substantially affirmed the decision of the hearing examiner. But it reversed a portion of the decision and amended the Notice and Order in ways we also describe later in this opinion.

This timely appeal by Race Track and Lessees followed.

## LUPA CLAIMS

Race Track and Lessees argue that the hearing examiner's decision is incorrect for several reasons under LUPA. For the most part, we disagree.

LUPA is the exclusive means of judicial review of land use decisions.[5] RCW 36.70C.130 outlines the standards in order for the superior court to grant relief requested by a LUPA petitioner.[6] Relief is granted only if the party seeking relief establishes that the hearing examiner erred under one of six standards.[7]

"An appellate court stands in the same shoes as the superior court and reviews the administrative record."[8] Alleged errors of law are reviewed de novo and questions of fact are reviewed for substantial evidence.[9] When reviewing a decision under LUPA, an appellate court must give substantial deference to both

---

[5] RCW 36.70C.030.

[6] RCW 36.70C.130(1).

[7] Durland v. San Juan County, 174 Wn. App. 1, 11, 298 P.3d 757 (2012).

[8] Dep't of Dev. and Envtl. Servs. v. King County, 177 Wn.2d 636, 643, 305 P.3d 240 (2013).

[9] Id.

the legal and factual determinations of a hearing examiner as the local authority with expertise in land use regulations.[10]

Race Track and Lessees argue that four of the six standards in RCW 36.70C.130 warrant relief in this case. They specifically rely on the standards set forth in the following subsections:

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

. . .

(f) The land use decision violates the constitutional rights of the party seeking relief.[11]

We address each argument in turn.

*RCW 36.70C.130(1)(b)*

Race Track and Lessees argue that the hearing examiner's decision is an erroneous interpretation of the law because "use of the track by ProFormance complies with CUP Condition 1(a)." For the most part, we disagree.

We note that the County does not challenge in its briefing whether this argument properly is one under RCW 36.70C.130(1)(b). Accordingly, we will analyze this and the remaining claims as presented in the briefing of the parties.

---

[10] Durland, 174 Wn. App. at 12.

[11] RCW 36.70C.130(1).

RCW 36.70C.130(1)(b) provides that the superior court may grant relief if "the land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." Whether a decision reflects an erroneous interpretation of the law under this standard is a question of law that the court reviews de novo.[12]

Here, CUP Condition 1(a) states:

> 1. The hours of tract operation shall be limited to 9:00 a.m. to 5:30 p.m., for both testing and racing with the following exceptions:
>
>> a. [Pacific Raceways] will be closed to all *race testing and racing* on Monday and Tuesday year-round, provided that these days may be used for racing when a rained out event could not be scheduled for the following weekend, or when a holiday which has a major event associated within it falls on a Monday or Tuesday. *Race testing is not meant to exclude police and emergency vehicle testing and training, or other non-race related testing functions that are quiet, non-impacting.*[13]

As stated earlier, the Notice and Order found a violation for the following:

> A. Use of primary Race Track for race-related functions on required quiet days in violation of permit conditions 1A and B, including but not limited to operation of ProFormance Racing School and use of the track by private vehicles for "lapping". DDES alleges that Race Track LLC knowingly permits uses on required quiet days which are race-related, are *not quiet, and are not "non-impacting"* in violation of the plain language of [the CUP].[14]

To bring the property into compliance, the Notice and Order required Race Track and Lessees to:

---

[12] Dep't of Ecology v. City of Spokane Valley, 167 Wn. App. 952, 961, 275 P.3d 367, review denied, 175 Wn.2d 1015 (2012).

[13] SC at 20 (emphasis added).

[14] Id. at 236 (emphasis added).

A. Cease all racing and performance driving school operations and any other race-related functions, including any and all racing, lapping, or similar uses of private vehicles on required quiet days by February 21, 2011.[15]

On appeal of the Notice and Order, the hearing examiner concluded:

10. The provision of Operating Condition No. 1 of the CUP is structured to control the hours of track operation. The general statement of hours was from 9:00 a.m. to 5:30 p.m., "for both testing and racing, with the following exceptions . . ." The first exception is that the track "will be closed to all race testing and racing on Monday and Tuesday year-round . . .", but that, "Race testing is not meant to exclude police and emergency vehicle testing and training, or other non-race related testing functions that are quiet, non-impacting." *There is no reasonable way that the foregoing language can be read as authorizing driver training for persons who are not police or emergency vehicle drivers on Mondays and Tuesdays at Pacific Raceways (SIR).* If the language of the CUP is ambiguous in other respects, it does not create or harbor any ambiguity on the question in issue. *It does not authorize the operation of a driving school on Monday or Tuesday, or on weekend quiet days.*[16]

The superior court reached the opposite conclusion when reviewing the

hearing examiner's decision:

ProFormance Racing maintains that its schools and clinics do not race or race test on Mondays, Tuesdays, or the required quiet summer weekend days. If they are correct, *nothing in the CUP prohibits non-racing and non-race testing activities that are quiet and non-impacting. Under the plain language of the CUP, it is not the existence of a driver education school that violates the CUP; it is only a use that is not quiet and that is impacting that contravenes the permit.*[17]

---

[15] Id.

[16] Id. at 2542 (emphasis added) (alterations in original).

[17] Clerk's Papers at 35 (emphasis added).

We agree with the superior court that the language of this condition does not, by its terms, prohibit a driver education and training school. But this is subject to an important proviso: the activities of such a school must be "quiet" and "non-impacting." To the extent such activities violate these conditions, they are prohibited. Like the superior court, we conclude that the hearing examiner erroneously concluded that a driver training school is not permitted under the CUP.

But we nonetheless agree with the hearing examiner's ultimate conclusion that there was a violation of the CUP. The hearing examiner also concluded that even if a driving school was permitted, the activities by ProFormance still did not comply because of noise:

> Even if one could interpret the CUP as authorizing a driving school on Mondays and Tuesdays, as King County did for a lengthy period of time, *the training done by ProFormance Racing School has not been "quiet" and "non-impacting", as those words are commonly understood.* The noise heard at nearby residential properties has been substantial, and the residents on some of those properties have been impacted.[18]

We previously stated in this opinion that the plain words of the CUP require that activities on the property must be both "quiet, [and] non-impacting." To the extent they are not, they violate the CUP. Thus, the hearing examiner was ultimately correct in deciding that Race Track and Lessees violated this condition. We consider later in this opinion whether there is substantial evidence in this record to support the finding that noise violated the CUP as the Notice and Order stated.

---

[18] SC at 2542 (emphasis added).

In sum, Race Track and Lessees fail in their burden to show that the hearing examiner's decision is an erroneous interpretation of the law to the extent it is based on the requirement that activities on the property must be "quiet" and "non-impacting." To the extent the decision rests solely on the view that the CUP bans a driving school outright, it is incorrect. We discuss later in this opinion the proper remedy for this error.

Race Track and Lessees also argue that the hearing examiner's decision is erroneous for a different reason. They claim that "the County has consistently defined 'non-impacting' to include the use of street-legal, muffled vehicles—not just within ambient levels." They argue that the superior court failed "to confirm that the words 'quiet, non-impacting' means within ambient noise levels." Because these arguments are not clearly and persuasively made, we do not address them any further.

### RCW 36.70C.130(1)(c)

Race Track and Lessees next argue that the hearing examiner's decision is incorrect because there is not substantial evidence in the record to support the hearing examiner's determination that Race Track and Lessees permitted activities that were neither "quiet" nor "non-impacting" in violation of the CUP. They also contend that there was no evidence in the record to support the hearing examiner's determination that in 1989 the County's interpretation of the CUP "evolved" and "expanded." We disagree with both assertions.

Under the substantial evidence standard, there must be a "sufficient quantum of evidence in the record to persuade a reasonable person that the

declared premise is true."[19] When reviewing a challenge to the sufficiency of the evidence under this standard, a court views facts and inferences in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority.[20] Doing so "'necessarily entails accept[ing] the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.'"[21]

Here, the County prevailed before the highest fact-finding authority: the hearing examiner. Accordingly, all facts and inferences are viewed in a light most favorable to the County. Applying this standard, there is substantial evidence in the record to support the challenged determinations.

First, there is substantial evidence that Race Track and Lessees permitted activities that were neither "quiet" nor "non-impacting," in violation of CUP Condition 1(a).

As discussed earlier, the hearing examiner determined, "[T]he training done by ProFormance Racing School has not been 'quiet' and non-impacting', as those words are commonly understood. The noise heard at nearby residential

---

[19] Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 829, 256 P.3d 1150 (2011).

[20] Id. at 828-29.

[21] Spokane County v. Eastern Wash. Growth Mgmt. Hearings Bd., 176 Wn. App. 555, 565, 309 P.3d 673 (2013) (alteration in original) (internal quotation marks omitted) (quoting State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)), review denied, 179 Wn.2d 1015 (2014).

properties has been substantial, and the residents on some of those properties have been impacted."[22]

The hearing examiner looked to dictionaries for the definition of "quiet" and stated that the ordinary meaning is "'still; calm; motionless . . . not noisy; hushed . . . or 'making no noise; silent . . . free of noise; hushed . . .'"[23] This was proper.

Additionally, in one of the hearing examiner's unchallenged findings, he pointed to specific evidence to support this determination:

> 21. The preponderance of evidence at the hearing established that noise from vehicles operating at Pacific Raceways could be heard at nearby residential properties on Mondays and Tuesdays and on designated weekend quiet days. The audibility of this off-site noise was testified to by the expert witnesses called by both King County and the appellants. The experts called by King County and the appellants measured noise levels using different standards, and offered different interpretations of "ambient noise levels". They also differed in their assessments of the degree of "impact" on persons hearing the noise. However, there was no substantial disagreement that the noise could be heard by surrounding residents.

> Exhibit 61, p. 7, Figures 6 and 7, provides a dramatic depiction of the noise differential at one nearby residence on Monday, August 15, 2011, between times when noise events were and were not observed emanating from Pacific Raceways. Although the noise level averages, identified as 30 minutes Leq, are moved by only 2.9 dBA (from 50.5 dBA to 53.4 dBA), the number and amplitude of peak noise events during the raceway activity are changed dramatically, with numerous events during raceway activity that are 10 dBA and more in excess of the 30 minute Leq without raceway activity.

---

[22] SC at 2542.

[23] Id. at 2535 (internal citations omitted) (quoting WEBSTER'S NEW WORLD DICTIONARY 612 (2d ed. 1975); AMERICAN HERITAGE DICTIONARY 1016 (2d ed. 1985)).

In addition, there was substantial testimony offered by King County that the noise heard on Mondays, Tuesdays and weekend quiet days was disturbing to some community residents. The testimony by other community residents, that they did not hear or were not bothered by noise from the race track, is credible, but does not detract from the fact that other residents did hear the noise and were bothered by it, and that the impact on some was substantial.[24]

The record also supports this determination. Many neighborhood witnesses testified about the loud activities at Pacific Raceways on "quiet days." Several testified that more noise reaches their homes now than in the past or the noise has been getting louder. Generally, they described distinct noises coming from the race track and described the impact of the noise on their lives. For example, they testified that the track noise interfered with their ability to talk with others, hold social gatherings, or concentrate on work.

Race Track and Lessees argue that the hearing examiner's determination is not supported by substantial evidence because it is based on testimony of "only some local community members" and these community members are biased and lack credibility. Specifically, Race Track and Lessees assert that: (1) the majority of these community members did not report CUP violations, (2) these community members' testimony identifies significant environmental noise sources surrounding the track, (3) "[s]ubjective 'annoyance' with sound from Pacific Raceways does not equate to a violation of the CUP"; (4) these community members' testimony lacks credibility; and (5) a majority of these community members "demonstrated that they cannot discern the difference

---

[24] Id. at 2538.

13

between the ProFormance School and police training." Additionally, Race Track and Lessees argue that these community members' testimony is "further undercut by the testimony from [other community members] who are not biased against the track."

None of these arguments are persuasive. The controlling rule is that this appellate court views facts and inferences in a light most favorable to the County, as the prevailing party below.[25] Appellants fail to cite any persuasive rule to the contrary. In following the controlling rule, we accept the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.[26] In this case, the hearing examiner (the fact-finder) expressly stated that testimony from other community residents "does not detract from the fact that other residents did hear the noise and were bothered by it, and that the impact on some was substantial."

Second, there is substantial evidence to support the examiner's determination that in 1989, the County's interpretation of the CUP evolved and activities allowed under the CUP expanded.

We first note that even if there was no substantial evidence to support this finding, Race Track and Lessees fail to explain how this would require reversal of the hearing examiner's decision. This finding regarding evolving interpretation by the County is not material to the outcome.

---

[25] See Phoenix Dev., Inc., 171 Wn.2d at 828-29.

[26] Eastern Wash. Growth Mgmt. Hearings Bd., 176 Wn. App. at 565.

In any event, this argument overlooks one of the hearing examiner's other findings. This other finding details correspondence between the permit administrator and the track manager in 1989, when the administrator affirmatively responded that a driver's training school was permitted under the CUP. This evidence supports the finding that the activities evolved and expanded in 1989.

In sum, there is substantial evidence to support the hearing examiner's factual determinations and its decision. We reject the arguments to the contrary.

*RCW 36.70C.130(1)(d)*

Race Track and Lessees argue that the hearing examiner's decision is incorrect because the doctrines of equitable estoppel and laches bar enforcement of the CUP. We disagree.

Under LUPA, a land use decision is a clearly erroneous application of the law to the facts if "the reviewing court is left with the definite and firm conviction that a mistake has been committed."[27] But the hearing examiner did not have the authority to decide claims based on either equitable estoppel or laches.

Nevertheless, the parties presented evidence on these issues during the proceedings before the hearing examiner. The superior court considered these doctrines and rejected application of both doctrines in this LUPA proceeding. So do we.

First, Race Track and Lessees argue that the County is estopped from "reversing its continuous, decades-long interpretations of the CUP Conditions."

---

[27] Citizens to Preserve Pioneer Park LLC v. City of Mercer Island, 106 Wn. App. 461, 473, 24 P.3d 1079 (2001).

"Equitable estoppel prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a party who has justifiably and in good faith relied."[28] When equitable estoppel is asserted against the government, the party asserting estoppel must establish five elements by clear, cogent, and convincing evidence. Those elements are: "(1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims; (2) the asserting party acted in reliance upon the statement or action; (3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action; (4) estoppel is 'necessary to prevent a manifest injustice'; and (5) estoppel will not impair governmental functions."[29] "The evidence must present unmistakable justification for imposition of the doctrine when a municipality has acted in its governmental capacity."[30] Application of the doctrine against the government is "not favored."[31]

We start our consideration of this argument with evaluation whether there is the required level of proof for the fifth element—whether estoppel will not

---

[28] Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wn.2d 868, 887, 154 P.3d 891 (2007).

[29] Id. (quoting Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993)).

[30] City of Mercer Island v. Steinmann, 9 Wn. App. 479, 482, 513 P.2d 80 (1973).

[31] Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 20, 43 P.3d 4 (2002).

impair governmental functions. The level of proof required is clear, cogent, and convincing.[32]

In City of Mercer Island v. Steinmann, this court noted that equitable estoppel will not apply to a governmental entity "where its application would interfere with the discharge of governmental duties . . . ."[33] It stated that estoppel may be applied equitably against a governmental entity acting in a proprietary capacity but stated that "the bar of the doctrine is less likely to be applied" when it acts in a governmental capacity.[34] It then quoted authorities that established that zoning ordinances constitute a governmental function.[35]

In concluding that the municipality was not precluded from enforcing zoning regulations in that case, this court stated, "The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught."[36]

Here, Race Track and Lessees seek to avoid the requirements of an important governmental function: enforcement of a CUP promulgated under County zoning laws. Their attempt to do so conflicts with the principles stated in

---

[32] Lybbert v. Grant County, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000).

[33] 9 Wn. App. 479, 481, 513 P.2d 80 (1973).

[34] Id. at 482.

[35] See id. at 482-83.

[36] Id. at 483.

Steinmann. In short, they fail to fulfill the fifth element of equitable estoppel against a governmental entity.

Race Track and Lessees attempt to distinguish Steinmann. They argue that the unlawful use was clearly prohibited under the zoning code in that case, and here, there is no plain mandate under the CUP that prohibits driving schools. This is not a material distinction. While Race Track and Lessees could not have known driving schools were prohibited, the plain language of the CUP provides fair notice that any activities had to be "quiet, non-impacting." Activities that did not meet these requirements were clearly prohibited.

We next consider the fourth element—that estoppel is necessary to prevent manifest injustice. Race Track and Lessees also do not persuasively establish this element. This is particularly so given that the hearing examiner properly concluded that they violated CUP Condition 1(a) for permitting activities that were not quiet and non-impacting.

More importantly, "A 'conditional use permit' is a permitted exception to zoning ordinances; it allows a property owner to use his or her property in a manner that the zoning regulations expressly permit under conditions specified in the regulations."[37] "But it is not a 'regularly permitted' use; it is permitted only upon the grant of a 'conditional use permit' . . . ."[38]

---

[37] Weyerhaeuser v. Pierce County, 95 Wn. App. 883, 885 n.1, 976 P.2d 1279 (1999).

[38] 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 4.22 (2d ed.).

18

Here, the race track may operate only under the CUP. Its activities are not authorized for the area without conforming to the conditions. Accordingly, estoppel is not necessary to prevent a manifest injustice. Rather, ***enforcement of the CUP*** is necessary to prevent a manifest injustice, namely, permitting continued noise from the track in this neighborhood. Accordingly, Race Track also fails to prove this element.

Additionally, Race Track and Lessees cannot establish the first element— a statement, admission, or act by the County, which is inconsistent with its later claims. They argue generally that the issuance of the Notice and Order was contrary to "the County's 21-years of consistent interpretations allowing driving schools for street-legal, muffled vehicles on 'quiet days' and Mondays and Tuesdays."

It is true that the County took inconsistent positions on whether driving schools were allowed under the CUP. But the violation was not based solely on the fact that Race Track and Lessees permitted driving schools. Rather, the Notice and Order found a violation based on the fact that Race Track permitted activities that "are race-related, ***are not quiet, and are not 'non-impacting.***"[39]

And this material portion of this finding is not inconsistent with the County's prior statements. As the superior court correctly pointed out, the County consistently represented that such activities were permitted as long as they were quiet and non-impacting.

---

[39] SC at 236 (emphasis added).

19

For example, a 1992 letter from the county to the track manager expressed concern "regarding noise on quiet days" and said that several sources stated that it was "not quiet at the track." The letter further stated:

> The type of activities which have been previously approved . . . namely filming or video taping, instructional driving schools and track maintenance work are all acceptable 'quiet day' activities ***provided they*** are non-spectator events, use non-impacting (muffled) vehicles, create no noise above ambient levels, and create no traffic impacts outside the track.[40]

Additionally, a 2005 letter from DDES stated, "Mon/Tues: Track is closed to 'racing' events. Training or driving courses involving 'street legal' cars are allowed ***as long as the activity is 'quiet and non-impacting.'***"[41]

Race Track and Lessees fail to show that the County's statements are inconsistent with its later claims that Race Track violated CUP Condition 1(a) by permitting activities that were not quiet and non-impacting. Rather, the County consistently maintained that activities on "quiet days" were subject to noise restrictions.

In arguing that equitable estoppel applies, Race Track and Lessees point to the following finding made by the hearing examiner:

> 31. Pacific Raceway's officials and King County DDES employees, including management, have agreed over the years that the use of the track on Mondays and Tuesdays for emergency vehicle testing and training, driver training, car clubs, and similar events that operate street legal (licensed) vehicles in a non-racing venue, have generally met CUP requirements for those events on

---

[40] SC at 91 (emphasis added).

[41] Id. at 129 (emphasis added).

Mondays and Tuesdays and on quiet weekend days to be 'quiet and non-impacting'.[42]

But the County's statements that such activities "*generally*" meet CUP requirements is not a statement that these activities would always be permitted. In short, Race Track fails to show inconsistent statements by clear, cogent and convincing evidence.

Race Track relies on Silverstreak Inc. v. Department of Labor & Industries to support its estoppel claim.[43] That reliance is misplaced.

There, the supreme court held that the Department of Labor and Industries was estopped from enforcing a violation order, because the Department's present position on the applicability of the prevailing wage act was inconsistent with the position it adopted in an earlier policy memorandum.[44]

Silversteak is distinguishable from this case. Unlike this case, that case did not involve enforcement of permit conditions or city code, and it did not involve the public and community members who have an interest in zoning. Importantly, in that case, the court explained that precluding the Department from applying its new policy position "does not impair any legitimate department functions."[45]

---

[42] Id. at 2541.

[43] Opening Brief of Appellants at 23-24 (citing Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wn.2d 868, 887, 154 P.3d 891 (2007)).

[44] Silverstreak, 159 Wn.2d at 876.

[45] Id. at 891.

Here, in contrast, for reasons already discussed, governmental functions would be impaired. Specifically, precluding the County from enforcing the CUP impairs zoning laws. Additionally, unlike Silverstreak, no manifest injustice would occur. This conditional use is not authorized for the area without conforming to the negotiated conditions of the CUP. Accordingly, Race Track and Lessees' reliance on this case is not persuasive.

In sum, Race Track and Lessees fail to show that equitable estoppel bars enforcement of the CUP condition in this case.

Second, Race Track and Lessees' argument that the doctrine of laches prevents the County from changing its interpretations of the CUP conditions is also not persuasive.

"Laches applies if three conditions exist: '(1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; [and] (3) damage to defendant resulting from the unreasonable delay.'"[46] "'[I]t is generally held that in respect of the enforcement of zoning ordinances, neither laches nor estoppel applies.'"[47]

Here, laches does not apply because the County did not unreasonably delay enforcing the CUP. As the superior court correctly stated, "[T]he factual

_____

[46] Citizens for Responsible Gov't v. Kitsap County, 52 Wn. App. 236, 240, 758 P.2d 1009 (1988) (quoting Buell v. City of Bremerton, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972)).

[47] Steinmann, 9 Wn. App. at 482 (quoting 3 C. RATHKOPF, THE LAW OF ZONING AND PLANNING § 2 (3d ed. 1972)).

record established before the Hearing Examiner defeats [Race Track and Lessees'] argument that there was an undue delay between the County's knowledge of CUP violations and the issuance of the Notice and Order."

For example, the record shows that the County received a "new wave of complaints" about Pacific Raceways in 2010. Additionally, witnesses testified that the track noise got louder over the years, and became more constant, especially by 2010. Some witnesses testified that they heard noise every single day by 2010. Additionally, several witnesses testified that they did not even know about the CUP until 2010. And some witnesses testified that they did not make complaints to the County about track noise until 2010.

Race Track and Lessees cite two extra-jurisdictional cases to argue that laches should apply.[48] But in those cases, the governmental entity delayed six and eight years respectively before commencing action.[49] Those cases are distinguishable based on that fact alone. Further, one of those cases acknowledged that "a claim of laches in the zoning context *is not judicially favored and is rarely applied 'except in the clearest and most compelling circumstances.'*"[50] This is not one of those compelling circumstances.

---

[48] Opening Brief of Appellants at 28-29 (citing Wieck v. D.C. Bd. of Zoning Adjustment, 383 A.2d 7 (D.C. 1978); City of Hancock v. Hueter, 118 Mich. App. 811 (Mich. Ct. App. 1982)).

[49] See Wieck, 383 A.2d at 11-12; Hancock, 118 Mich. App. at 818.

[50] Wieck, 383 A.2d at 11 (emphasis added) (quoting Moore v. Bridgewater Twp., 69 N.J. Super. 1, 25, 173 A.2d 430 (N.J. Super. Ct. App. 1961)).

The failure to prove the second element of laches makes it unnecessary for us to address either of the remaining two elements. Accordingly, we do not discuss either.

We reject application of the doctrine of laches in this case.

The County also argues that equitable estoppel and laches do not apply based on RCW 7.48.190. Because of our resolution of these issues in the manner we already discussed in this opinion, we need not address this argument.

<em>RCW 36.70C.130(1)(f)</em>

Race Track and Lessees argue that the hearing examiner's decision violates the constitutional principles of due process and fundamental fairness. Specifically, they argue the CUP Conditions are unconstitutionally vague as applied to them because a person of common intelligence cannot determine which activities are allowed or prohibited. We hold that Race Track and Lessees fail in their burden to prove beyond a reasonable doubt that there is any constitutional violation.

An ordinance is presumed constitutional, and the party challenging it must demonstrate that it is unconstitutional beyond a reasonable doubt.[51] "An ordinance is unconstitutionally vague if it does not provide 'fair warning and nondiscriminatory enforcement.'"[52] A statute is void for vagueness if it "'is framed

---

[51] Kitsap County v. Mattress Outlet/Gould, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005).

[52] Young v. Pierce County, 120 Wn. App. 175, 182, 84 P.3d 927 (2004) (quoting City of Seattle v. Eze, 45 Wn. App. 744, 748, 727 P.2d 262 (1986)).

24

in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'"[53] "But the ordinance does not need to 'meet impossible standards of specificity.'"[54] In examining a vagueness challenge, this court examines the ordinance as applied, not for facial vagueness.[55] An alleged constitutional violation presents a question of law that this court reviews de novo.[56]

Here, we review the challenge to the CUP in the same manner as a challenge to an ordinance or other law. Race Track and Lessees argue generally that they are being subjected to ad hoc interpretations of the law by County officials. They contend the County "issued multiple interpretations over a 21-year time period prior to suddenly reversing that interpretation in 2010." And they argue in their reply brief that the language "non-race related testing functions that are quiet, non-impacting" is vague.

Whatever lack of clarity that exists in some of the language of the CUP is clearly outweighed by the express language that states that the activities within the scope of CUP Condition 1(a) must be "quiet and non-impacting." This is not vague. It provides fair notice that activities allowed under this condition are

---

[53] Id. (quoting Myrick v. Bd. of Pierce County Comm'rs, 102 Wn.2d 698, 707, 677 P.2d 140 (1984)).

[54] Id. (quoting Anderson v. City of Issaquah, 70 Wn. App. 64, 75, 851 P.2d 744 (1993)).

[55] Id.

[56] Abbey Road Grp., LLC v. City of Bonney Lake, 167 Wn.2d 242, 250, 218 P.3d 180 (2009).

25

subject to noise restrictions. The County cited this as a basis for its Notice and Order. Race Track and Lessees fail to specifically articulate how "quiet and non-impacting" is vague as applied to them.

Moreover, the CUP does not need to "'meet impossible standards of specificity.'"[57] Thus, even though it does not specifically list the type of activities that are included within "non-race related testing functions," the condition nonetheless makes clear that any such activities must be quiet and non-impacting. Overall, persons of common intelligence would understand the meaning of this condition, and Race Track and Lessees fail to show beyond a reasonable doubt that this condition is unconstitutional.

Race Track and Lessees argue that the supreme court's decision in Burien Bark Supply v. King County "should control the outcome here."[58] Their reliance on that case is misplaced.

There, the supreme court concluded that a zoning ordinance was unconstitutionally vague in its application to Burien Bark Supply.[59] Burien Bark Supply, a beauty bark business, was trying to bring its activities into compliance with a zoning statute.[60] The zoning ordinance permitted manufacturing and

---

[57] See Young, 120 Wn. App. at 182 (quoting Anderson, 70 Wn. App. at 75).

[58] Appellants Opening Brief at 31 (citing Burien Bark Supply v. King County, 106 Wn.2d 868, 725 P.2d 994 (1986)).

[59] Burien Bark Supply, 106 Wn.2d at 868-69.

[60] Id.

processing "in limited degree."[61] The supreme court stated:

> The code does not explain how a procedure is to be deemed "limited." We cannot tell, for example, whether one should consider the number of steps in the process; the percentage of business time devoted to the process; the extent to which the process is necessary for the overall business; or the physical size of the process. The code unconstitutionally leaves to the discretion of county officials the substance of determining what activities are prohibited.[62]

Here, in contrast, the phrase "quiet and non-impacting" does not leave to the discretion of the County officials what activities are prohibited. Rather, the CUP requires activities that are within these commonly understood terms.

Further, as the superior court correctly noted, the language at issue in this case is not a general zoning ordinance, but rather it is a "specific, negotiated permit that contains clear, express language ('quiet') that it and the community both knew it must abide by to be able to conduct business under the permit."

For these reasons, Race Track and Lessees' reliance on this case is not persuasive.

### RCW 36.70C.130(1)(b), (d), and (f)

Race Track and Lessees argue that the hearing examiner's decision is incorrect because "vehicles other than karts complies with [the] conditions of the CUP." Specifically, they argue that the County is barred from prohibiting vehicles other than karts on the track under "equitable estoppel, laches, and/or

---

[61] Id. at 869.

[62] Id. at 871.

27

constitutional principles of due process and fundamental fairness." These arguments have no merit.

In general, a party with unclean hands may not assert equitable estoppel or laches.[63] Since these are equitable defenses, they cannot "be urged by those who withhold information which would have prompted action at an earlier time."[64]

Although Race Track and Lessees point to several possible grounds for reversal and cite to the LUPA statute, their arguments appear to be primarily based on equitable estoppel. Thus, the County argues that Race Track and Lessees are not entitled to equitable relief because PGP's owner engaged in willful misconduct in the permit process when he sought to relocate the kart track. We agree with the County.

Here, as discussed previously in this opinion, in 2003, Race Track and PGP contacted DDES regarding the relocation of the "go cart track." They asserted that the request to move the track was not a change in use or modification of the CUP conditions that would trigger the need for an amended conditional use permit.

This portion of the Notice and Order alleged a violation for:

> B. Use of shift kart track by vehicles other than shift karts, including but not limited to motorcycles and street legal automobiles in violation of permit condition 15 requiring all improvements and uses to be conducted in accordance with the pre-March 31, 1984 plot plan.[65]

---

[63] Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 949, 640 P.2d 1051 (1982).

[64] Id.

[65] SC at 236.

28

To bring the property into compliance, it stated:

> B. Cease all non-shift kart use of the shift kart track by February 21, 2011.[66]

The superior court properly concluded that Race Track and PGP's willful misconduct was a sound basis for King County's violation order and the hearing examiner's affirmation of the Notice and Order.

The hearing examiner made several findings about PGP's representations to the County when it sought to relocate the kart track. Specifically, the hearing examiner focused on PGP's representation that only "karts" would be using the track:

> 27. **Other significant documents submitted to King County in 2005 in support of the re-location of the Kart Track stated or implied that use of the relocated track would be exclusively by go karts or shift karts.** They were the Environmental Checklist, which stated, "Exhaust and emissions from karts will continue to occur as a result of kart track operations", and "Long term effects will be the noise created by the karts during racing, practice and track operations. . ." (Exh. No. 79, deposition of [PGP's owner], exh. No. 7, pp. 5 and 9)  The noise study requested by King County and submitted by the applicants analyzed only use of the new track by karts.
>
> 28. When DDES issued its MDNS and Clearing and Grading Permit for relocation of the kart track, it reasonably understood from the application documents and other communications received from the applicants (Race Track and [PGP]), and from the applicants' engineers, that the use proposed for the re-located track would be for go karts, shift karts or performance karts. If the applicants had a different understanding, based upon industry usage of terms or the applicants' intentions, they failed to communicate that to King County. **Consequently, use of the relocated Kart Track by other types of vehicles was not considered by King County when reviewing the proposal**

---

[66] Id.

29

***that resulted in the approval of [the] Clearing and Grading Permit.*[67]**

In another finding, the hearing examiner stated:

Based upon the documents presented to King County by the applicants preceding and throughout the application process, King County intended, and the applicants either understood or should have understood, that the description of uses as "shift kart race events, driver training and track rental," limited all uses on the track to karts.[68]

These findings are not challenged. Further, they are supported by the documents referenced by the hearing examiner. They are also supported by other evidence in the record, for example, Race Track and PGP's 2003 letter to the County, which stated, "The go cart track needs to be moved ***in order for it to be used by shift carts*** because the frequency of use will increase and create conflicts with usage of the road course."[69]

In sum, Race Track and Lessees are not entitled to equitable relief.

Race Track and Lessees argue that "kart track" is an industry term, the requirements of the CUP are unclear, and they "reasonably believed that those same activities could continue on the relocated track." They also argue that use of the track by other vehicles has been the "status quo for years," the County inspected the track after it was completed, County officials expressly stated that a wide range of uses are allowed on the track, and they invested substantially in the track relocation and improvements. But these arguments are equitable in

---

[67] SC at 2539-40 (emphasis added).

[68] Id. at 2540.

[69] Id. at 97 (emphasis added).

nature. Because Race Track and PGP have unclean hands, these arguments are not persuasive.

## RELIEF

Based on our rejection of most of the challenges based on LUPA, we substantially affirm the hearing examiner's decision. We reverse the decision only to the extent of the modification of the Notice and Order by the hearing examiner.

The question, then, is what must be done to address the portion of the hearing examiner's decision that was incorrect. As previously discussed, the language of the CUP does not, by its terms, prohibit a driver education and training school. But the activities of such a school must be "quiet" and "non-impacting." Among other things, the Notice and Order requires Race Track and Lessees to "[c]ease *all* racing and *performance driving school operations* . . . ."[70] This modification is too broad.

RCW 36.70C.140 states, "The court may affirm or reverse the land use decision under review or *remand it for modification or further proceedings*."[71] In our view, this statute does not authorize a reviewing court—either the superior court or this court—to modify the Notice and Order itself.[72] Accordingly, we remand the decision to the hearing examiner with directions to modify its decision so that it is not inconsistent with this decision.

---

[70] Id. at 236 (emphasis added).

[71] (Emphasis added.)

[72] See RCW 36.70C.140.

31

One final point. Race Track and Lessees claim there is a need to address "defining whether the terms 'quiet and non-impacting' equate to within ambient noise levels."[73] The County does not respond to this argument. And there is no further clarification of this claim for purposes of this appeal. Accordingly, we do not further address this assignment of error.

## ATTORNEY FEES

The County seeks an award of reasonable attorney fees on appeal based on RCW 4.84.370. Because this statute does not authorize an award of attorney fees to the County under the circumstances of this case, we deny the request.

RCW 4.84.370 states:

(1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of *a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision.* The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and

(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

(2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is

---

[73] Opening Brief of Appellants at 2.

considered a prevailing party if its decision is upheld at superior court and on appeal.[74]

The County initially characterized this case in its briefing as one that "involve[s] a decision to issue, condition, or deny a conditional use permit." Not so. As this opinion makes clear, this is a case enforcing violations of a CUP. Given this mischaracterization of the nature of this proceeding and the lack of any argument that this proceeding falls within the emphasized language of the above quotation of the statute, we reject this theory of recovery.

This approach is consistent with Tugwell v. Kittitas County.[75] There, Division Three denied a request for attorney fees on the basis that the case involved rezoning, not a development permit.[76] Thus, RCW 4.84.370 was inapplicable.

The County supplemented its request for fees by citing Mower v. King County.[77] There, the decision on the LUPA appeal was one to enforce an alleged code violation arising from dumping fill and debris without obtaining a permit.[78] The County prevailed at the hearing examiner level, the superior court, and at this court.[79] This court awarded fees on appeal to the County. In doing

---

[74] (Emphasis added) (alteration in original).

[75] 90 Wn. App. 1, 951 P.2d 272 (1997).

[76] Id. at 15.

[77] Statement of Additional Authorities at 2 (citing Mower v. King County, 130 Wn. App. 707, 125 P.3d 148 (2005)).

[78] Mower, 130 Wn. App. at 711.

[79] Id. at 710-11.

so, this court appears to have relied on subsection 2 of the above statute.[80] That subsection provides for an award of fees to a governmental entity whose "decision" is upheld by the courts. While stating that the plain language of this subsection supported the award of fees, this court did not expressly address whether the "decision" was within the scope of the matters described in subsection 1. We conclude the types of decisions must be the same. And we know that the decision before us does not fall within the language of subsection 1. Accordingly, we conclude that Mower is distinguishable.

In sum, the County is not entitled to an award of reasonable attorney fees on appeal in this case.

We affirm in part, reverse in part, and remand to the hearing examiner for modification of the decision so that it is not inconsistent with this decision. We deny the County's request for attorney fees.

Cox, J.

WE CONCUR:

Trickey, J.

Leach, J.

---

[80] See id. at 720-21.