[No. 55302-0-I.   Division One.   November 28, 2005.]

DANA B. MOWER ET AL., *Appellants*, v. KING COUNTY, *Respondent*.

---

[67] *Cadwallader*, 155 Wn.2d at 878 (emphasis added) (citations omitted) (quoting *Lopez*, 147 Wn.2d at 520)

*Eric R. Hultman* (of *Dann & Meacham*), for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Stephen P. Hobbs, Peter G. Ramels,* and *Michael J. Sinsky, Deputies,* for respondent.

¶1 GROSSE, J. — The deposit of fill in sensitive areas requires a permit in King County (County). Dana Mower did not apply for a permit and was properly cited for his actions. Moreover, given the propriety of the notice of violation, Mower is not entitled to the return of his performance bonds and financial guarantees or entitled to compel the County to make a final inspection of his plat until the violations are cured. We affirm the decisions of the hearing examiner and the superior court in all respects, and award the County attorney fees on appeal.

## FACTS

¶2 Dana Mower and his corporation, Tiger Mountain L.L.C., (Mower) sought to develop a "Street of Dreams"

short plat off the Issaquah-Hobart Road in unincorporated King County. As a condition of plat approval, Mower posted performance bonds and financial guarantees. During the project, Mower had a large volume of fill excavated to create a drainage-retention pond on the property. The fill was dumped on a portion of the property defined as a sensitive area, as set out in the preliminary plat approval. Although there is a dispute as to the actual amount of the fill, there is no dispute that it was a minimum of 2,000 cubic yards in an area of about 175 feet wide by 300 feet long.

¶3 The prior owner of the property complained to the County about Mower's activity on the property, partially because access to a portion of his water system is blocked. The County determined that Mower's disposal of the fill and debris had been done without obtaining a necessary grading permit. The County sent violation notices to Mower requesting that he remove the dumped material and requiring that the sensitive area be restored to the alleged previolation condition. Mower refused these requests.

¶4 Thereafter, the Department of Development and Environmental Services (DDES) issued a notice of code violation to Mower for (1) grading in excess of 100 cubic yards without a grading permit, (2) failing to implement erosion and sedimentation controls, and (3) doing unapproved clearing and grading within sensitive areas.[1]

¶5 Mower appealed the code violation to the King County Hearing Examiner. After the hearing, the examiner issued a decision denying Mower's appeal. The decision outlined the evidence presented at the hearing regarding the three claimed code violations and made detailed findings of fact. The examiner ruled in favor of the County. The examiner specified that civil penalties were to be assessed unless a completed grading permit application was submitted within 21 days of the decision, including the submission of a sensitive area restoration plan.

---

[1] The underlying facts supporting the notice of code violation and Mower's arguments refuting the claimed violations need not be set forth here, but will be discussed as needed in the analysis section.

¶6 Mower filed a Land Use Petition Act (LUPA), chapter 36.70C RCW, appeal of the examiner's decision in superior court. At the same time, Mower filed a complaint for damages pursuant to RCW 64.40.020 (alleging improper actions by the County caused damages to him). After briefing and argument, the superior court denied the LUPA appeal, affirming the hearing examiner's decision.

¶7 Following the decision, without taking steps to cure the violations or comply with the decisions of the hearing examiner and the superior court, Mower sought an alternative writ of mandamus to compel the County to release the performance bonds and financial guarantees posted as part of the plat approval process. He claimed that the alleged land use violations have nothing to do with the plat approval and thus he is owed the amount of the bond and guarantees. The superior court disagreed, denied the alternative writ of mandamus and refused to release the performance bond.

¶8 Thereafter, the County moved for summary judgment on Mower's claim for damages. Given the prior decisions in the matter, Mower conceded that summary judgment was appropriate at the time. Summary judgment was granted in favor of the County.

¶9 Mower then filed this appeal, arguing that the superior court erred by affirming the hearing examiner's decision on the LUPA appeal and by denying the alternative writ of mandamus. Mower argues that if either the LUPA decision or the mandamus action is reversed, then the summary judgment should be reversed as well. Mower argues he is entitled to pursue his claim for damages at trial.

## ANALYSIS

¶10 Mower claims the hearing examiner, as affirmed by the superior court, erred in determining that he engaged in grading and filling activity without a required permit. Under LUPA, this court stands in the shoes of the superior court and limits its review to the record before the local jurisdiction's body or officer with the highest level of au-

thority to make the determination—here, the hearing examiner.[2] Mower bears the burden of meeting one of six standards for granting relief set forth in RCW 36-.70C.130(1).[3] The parties have each set forth four of the standards as being potentially relevant to the appeal. Three of the four are the same and each party suggests a fourth alternative standard. Given the burden of proof, we will use the standards argued by Mower.[4]

¶11 In summary, Mower claims DDES committed error by going outside its authority by adding criteria to the terms "maintenance" and "road prism" to narrowly interpret the exceptions for clearing and grading permits in the county code. He also asserts that the hearing examiner made findings unsupported by substantial evidence, resulting in a violation of his constitutional due process rights.

¶12 The King County Code (KCC) requires that: "[e]xcept as exempted in KCC 16.82.050, no person shall do any clearing or grading without first obtaining a clearing and grading permit from the [DDES] director."[5] Mower does not dispute that his placement of 2,000 cubic yards of fill constitutes grading activity that normally requires a permit, but argues that he qualifies under the exemptions set

---

[2] RCW 36.70C.120; *Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assocs.*, 151 Wn.2d 279, 288, 87 P.3d 1176 (2004); *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751, 49 P.3d 867 (2002).

[3] *Lakeside Indus. v. Thurston County*, 119 Wn. App. 886, 894, 83 P.3d 433 (2004).

[4] The standards argued by Mower are that:

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

. . . .

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1)(b)-(d), (f); *Pinecrest Homeowners*, 151 Wn.2d at 288.

[5] Former KCC 16.82.060 (1998).

forth in former KCC 16.82.050.[6] Mower argues that the grading and fill was no more than three vertical feet deep and was not deposited in a sensitive area, was for the purpose of maintaining an existing road, was for roads within a preliminarily approved plat, and that he properly controlled erosion and drainage. We disagree.

¶13 The fill at issue occurred in Tract A of the short plat. Tract A was specifically set aside as a sensitive area to compensate for the degradation of other sensitive areas that would occur during the course of development of the property. The fill deposited on Tract A covered an area of approximately 300 by 175 feet. Exhibit 14 contains a sketch of the fill area and attached to the exhibit are pictures of the fill. The pictures show a huge mix of dirt, muck, and logs covering a wide swath of land. The evidence in the record before the hearing examiner that this fill exceeded a depth of 3 feet is compelling.

¶14 Joe Vidos, the former owner of the property, testified to the extent of the fill and estimated its depth. He estimated 15 to 20 feet of fill depth in some areas, 7 to 8 feet in others. Greg Sutton, a DDES code enforcement officer, also testified to the extent of the fill after visiting the site on

---

[6] Former KCC 16.82.050 (2001) states in pertinent part:

No person shall do any clearing or grading without first having obtained a clearing and grading permit from the director except for the following:

. . . .

C. Maintenance of existing driveways or private access roads, within their existing road prisms, provided that the performance and restoration requirements of this chapter are met and best management practices are utilized to protect water quality.

. . . .

F. Any clearing or grading for roads within a preliminary or finally approved residential plat which has been approved by the director and for which a financial guarantee has been posted.

. . . .

I. Clearing or grading within a preliminary or finally approved residential plat not involving any excavation exceeding five feet in vertical depth, or any fill exceeding three feet in vertical depth regardless of the amount of material to be removed; provided that this exception does not apply if the clearing or grading is within a sensitive area as regulated in K.C.C. chapter 21A.24 or an area placed into tracts or easements pursuant to K.C.C. 21A.12.030.

a couple of occasions. Sutton concluded that in some of the areas the fill was at least 15 vertical feet deep. The hearing examiner found there were fill depths greater than five feet. There was other testimony and evidence to support the finding as well. In sum, the evidence is overwhelming that the fill placed in Tract A was more than three feet deep. The hearing examiner's finding is supported by substantial evidence in the record.

¶15 Further, the fill depth exception applies only if the fill is deposited outside a sensitive area. If the fill is placed inside a sensitive area, then a grading permit is always required.[7] Contrary to Mower's assertions, there is an abundance of evidence showing that Tract A was designated as a sensitive area. During preliminary plat approval, Tract A was designated as a sensitive area as it was specifically determined to be adjacent to protected wetlands and associated buffers. The short subdivision conditions set forth that a special tract be designated as a sensitive area that was to be left undisturbed. The provisions specified that a disturbance of that tract would constitute a sensitive area violation. These requirements were carried forward into the final recorded short subdivision filed in July 2001.

¶16 The evidence shows the fill and grading in Tract A occurred in a designated sensitive area. Even Mower admitted that he deposited fill within Tract A. This admission belies any contrary argument that he was somehow exempt from obtaining a grading permit.

¶17 Additionally, a DDES wetland ecologist confirmed that the fill was placed in Tract A and that it further encroached on the 50 foot regulatory buffers of wetlands. Mower's arguments to the contrary are not persuasive. The evidence before the hearing examiner was clear that fill was placed within Tract A, a designated sensitive area, and that it encroached on an adjacent wetland and buffer as well. No exemption to the KCC provision applies in this circumstance and a grading permit was mandatory.

[7] Former KCC 16.82.050 (2001).

■ ¶18 Mower also claims that the placement of fill in Tract A was exempt based on the grading code exemption for the "[m]aintenance of . . . private access roads" within their existing "road prisms."[8] Mower and the County dispute the definition of the terms "maintenance" and "road prism" in applying the exemptions. Mower claims the County must interpret and enforce the code as it is written without adding new criteria.[9] He points out that the terms "maintenance" and "road prism" are not defined in the code. But the *Schroeder*[10] holding and the facts here are distinguishable and are not helpful to Mower's argument. In *Schroeder*, the court held that the city of Bellevue could not prohibit the addition of a bay window because the code explicitly authorized them. Here the actions taken by Mower in dumping the fill on old logging roads did not meet a plain and ordinary definition of the terms maintenance or road prism.

¶19 The term "maintenance" has an accepted plain and ordinary meaning different from Mower's interpretation. The term is properly defined as "the labor of keeping something . . . in a state of repair or efficiency; care, upkeep."[11] It has also been similarly defined as "[t]he work of keeping something in proper condition; upkeep."[12] The record discloses that Mower's placement of fill was not maintenance. The placement of the fill destroyed the utility of the road(s). As stated in a letter by Rick Fardig, the person who did the fill work, the fill prevented vehicle access to the area and added a significant amount of vegetation which blocked any traffic flows or use of the logging roads. The prior owner, Vidos, continues to possess an access easement for his water tank, but testified that

---

[8] Former KCC 16.82.050(C) (2001).

[9] *Peter Schroeder Architects v. City of Bellevue*, 83 Wn. App. 188, 191, 920 P.2d 1216 (1996).

[10] *Id.*

[11] Webster's Third New International Dictionary 1362 (1981).

[12] American Heritage Dictionary of the English Language 1055 (4th ed. 2000).

after the fill was dumped he can no longer access his water tank. Additionally, there was testimony that the nature of the fill was not appropriate for use on a road surface and therefore cannot be equated with road maintenance.

¶20 Although the term "road prism" is not a term understood by most lay persons, the phrase has an accepted meaning in the road construction industry. A road prism includes all the surface of a road and the cut or fill slopes, if any, that were constructed when the road was built.[13]

¶21 Mower argues that the dictionary definition of the term "road prism" refers to "[a] solid figure whose bases or ends have the same size and shape and are parallel to one another, and each of whose sides is a parallelogram." This definition describes a typical glass prism and has little application to road construction or maintenance other than some slight resemblance to shape. We reject this definition as being inappropriate to the facts of the case. In any event, the dumping of fill was outside of any "road prism" as the term is commonly used in construction. The private roads in Tract A were between 12 and 14 feet wide yet the area filled was a minimum of 90 feet wide, wider in some locations.

¶22 Mower also contends the grading was exempt from permits as the grading was for roads within a preliminary approved plat.[14] Mower chooses to read the language of the code to permit him to conduct any grading within a preliminary approved plat, even if that grading was contrary to the approved plat conditions. We disagree. The preliminary approved plat set forth specific details about the construction of roads within the short plat. This ap-

---

[13] *See* WAC 468-34-110.

[14] Mower cites former KCC 16.82.050(F) (2001), which provides:

No person shall do any clearing or grading without first having obtained a clearing and grading permit from the director except for the following:

. . . .

F. Any clearing or grading for roads within a preliminary or finally approved residential plat which has been approved by the director and for which a financial guarantee has been posted.

proval did not contemplate grading on the logging roads within Tract A. Permitted grading was to be shown on the final engineering plans, which show no roads in Tract A.

¶23 Mower also contends that he took necessary measures to control erosion and damage and that the County recognized this and withdrew this portion of the code violation. This is incorrect. The record shows that Mower was cited for an erosion control violation. The hearing examiner issued a finding regarding this issue. The record established that Mower failed to maintain erosion control measures when the fill was placed, specifically noting that the fabric silt fencing was breached by being torn, knocked over, or not maintained after the dumping. At oral argument, counsel for Mower conceded this violation.

¶24 The critical issue in this case is whether Mower committed a "grading violation." The evidence is overwhelming that his actions did not constitute an exemption to the permit requirement. The decision of the hearing examiner and the superior court denying the LUPA appeal is affirmed.

¶25 Mower also claims the superior court erred in denying, in the alternative, a writ of mandamus to compel the County to perform a final inspection, calculate final inspection fees and to release financial guarantees he posted as a condition of developing the short plat.

¶26 At the outset, we note that mandamus is an extraordinary writ.[15] The applicant seeking a writ of mandamus has the burden of showing that the public or body has a clear duty to act. A court may issue a writ of mandamus to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station.[16] The writ issues in cases where there is not a plain, speedy, or adequate remedy in the ordinary course of law. It is issued upon affidavit on an application of

---

[15] *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994).

[16] RCW 7.16.160.

a party beneficially interested.[17] Thus before a writ will issue, the applicant must satisfy those three elements.[18]

¶27 However, the action of mandamus is not proper to compel a discretionary act.[19] "The act of mandamus compels performance of a duty, but cannot lie to control discretion."[20] Thus mandamus can direct an officer or body to exercise a mandatory discretionary duty, but not the manner of exercising that discretion. Generally, this court reviews the decision de novo because the same written record is before the court on appeal.[21]

¶28 Mower asserts that he is entitled to a writ of mandamus, to compel the County to release performance bonds and financial guarantees. He argues that the bonds and guarantees apply only to improvements required for plat approval. Mower claims that he satisfactorily completed all those improvements.

¶29 But Mower fails to recognize that the "Agreement(s) to Complete Plat Improvements" required him to fully complete all approved plat conditions in compliance with construction plans and profiles, specifically in conformance with applicable county ordinances, standards, and specifications and to the satisfaction of the director of DDES. While listing relevant county ordinances, the agreement also required Mower to complete all approved plat conditions, which included requirements related to grading and sensitive areas. The financial guarantees Mower entered into, and now seeks to avoid, are specifically tied to the agreements and plat conditions.

¶30 Mower also claims he has no other remedy for obtaining release of the bonds or financial guarantees. But

---

[17] RCW 7.16.170.

[18] *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003).

[19] *State ex rel. Burlington N., Inc. v. Wash. Utils. & Transp. Comm'n.*, 93 Wn.2d 398, 410, 609 P.2d 1375 (1980).

[20] *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 398, 20 P.3d 907 (2001) (citing *Benedict v. Bd. of Police Pension Fund Comm'rs*, 35 Wn.2d 465, 475, 214 P.2d 171 (1950)).

[21] *Saldin Sec. v. Snohomish County*, 80 Wn. App. 522, 527, 910 P.2d 513 (1996).

even though the evidence seems to support the fact that he has taken care of most of the "punch list" items cited to him by DDES in order to get a final inspection and release of the bonds and fees, he chooses not to apply for a grading permit, remove the illegally dumped fill, or perform restoration activities to Tract A of the short plat. The County properly exercised its discretion involved in the issuance of punch lists in which Mower's failure to remedy violations cause the denial of final permit approval. The superior court was correct in denying Mower's application for an alternative writ of mandamus.

¶31 Mower admits the superior court properly granted summary judgment in favor of the County on the issue of damages under RCW 64.40.020 if the underlying LUPA or mandamus arguments are correct. He admits that only if this court reverses either of those rulings will he be entitled to pursue such a damage claim in the superior court. Given our decision, the grant of summary judgment in favor of the County is affirmed.

¶32 King County seeks reasonable attorney fees on appeal. RCW 4.84.370 sets forth:

(1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

. . . .

(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

(2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

¶33 This statute allows an award of attorney fees before appellate courts but does not authorize an award of attorney fees incurred at the trial level.[22] Under the plain language of the statute, King County is the prevailing party in this case where its decision is upheld at the superior court and on appeal as happened here.[23]

¶34 We affirm the decision of the hearing examiner and the superior court in all respects and award the County attorney fees on appeal.

APPELWICK, A.C.J., and BAKER, J., concur.

Reconsideration denied January 12, 2006.

---

[22] *Baker v. Tri-Mountain Res., Inc.*, 94 Wn. App. 849, 854, 973 P.2d 1078 (1999).

[23] *See Overhulse Neighborhood Ass'n v. Thurston County*, 94 Wn. App. 593, 601, 972 P.2d 470 (1999).