# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Appellant/Cross-Respondent, | No. 81680-2-I (consol. with No. 81532-6-I) |
| v. | |
| TYLOR SEAN DONNELLY, | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

DWYER, J. — The State appeals from the superior court's order granting Tylor Donnelly's motion to amend the warrant of commitment to award him credit for time served at liberty. Because Donnelly is not entitled to this form of equitable relief from the sentence, we reverse the superior court's order amending the warrant of commitment.

Additionally, Donnelly cross appeals from the superior court's order denying his petition for a writ of mandamus. This petition sought a writ requiring the San Juan County sheriff to apply for a second parole permit so that Donnelly could reenter the United States to serve the remainder of the sentence imposed upon him. Because Donnelly fails to demonstrate that the sheriff had a clear duty to apply for the parole permit, we affirm the superior court's order denying the petition.

I

Most of the facts underlying this appeal are set for forth in our first opinion in this matter, State v. Donnelly, No. 77816-1-I, slip op. at 1-6 (Wash. Ct. App. May 6, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/778161.pdf. In his prior appeal, Donnelly asserted that the superior court erred by denying his motion to amend the warrant of commitment to award him credit for days during which he was unable to report for work crew. Donnelly, No. 77816-1-I, slip op. at 1. We rejected Donnelly's argument and affirmed the superior court's order. Donnelly, No. 77816-1-I, slip op. at 1. In so doing, we reasoned that Donnelly failed to meet the requirements to be granted credit for time served at liberty. Donnelly, No. 77816-1-I, slip op. at 11.

On December 5, 2017, Donnelly, for whom the sheriff had arranged the issuance of a permit issued by the United States Department of Homeland Security allowing entry into the United States, filed a motion in the superior court to stay the sentence pending his first appeal.[1] The State opposed this motion. On December 12, the superior court entered an order granting Donnelly's motion to stay, but only with regard to the term of work crew service that was authorized

---

[1] Under federal immigration law, Donnelly's felony conviction renders him unable to enter the United States, absent special authority from the Secretary of the Department of Homeland Security. U.S. DEP'T OF HOMELAND SEC'Y, PRIVACY IMPACT ASSESSMENT FOR THE ICE PAROLE AND LAW ENFORCEMENT PROGRAMS UNIT CASE MANAGEMENT SYSTEMS, at 1 (Dec. 3, 2018), https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-plepucms-december2018.pdf#:~:text=The%20Parole%20and%20Law%20Enforcement%20Programs%20Unit%20%28Parole,in%20the%20ICE%20Parole%20Unit%20Case%20Management%20Systems[https://perma.cc/T47M-4AXP].

under the sentence. Sometime thereafter, Donnelly departed the United States and returned to Canada.[2]

On October 24, 2019, following our decision in the first appeal, the State filed a motion in the superior court wherein it sought an order requiring Donnelly to appear and complete the remainder of the sentence. In response, Donnelly filed a memorandum in which he made the following two requests:

1. That his commit date be set in the second week in January at the earliest; and
2. That an appropriate order be entered requiring the Sherriff's Office to monitor Mr. Donnelly for an additional month so that he can complete the community service portion of his sentence in compliance with federal regulations.

On November 12, 2019, the superior court heard the State's motion. Donnelly did not appear at the hearing, but his attorney was present. During the hearing, the State requested that the superior court issue a bench warrant for Donnelly's arrest. Additionally, the State opposed both of the requests made in Donnelly's memorandum. The superior court declined to issue a bench warrant for Donnelly's arrest and suggested that Donnelly file a written motion clarifying his requests.

On November 18, 2019, Donnelly filed a petition for a writ of mandamus to require the San Juan County sheriff to apply for a second parole permit from the Department of Homeland Security so that Donnelly could reenter the United States to serve the remainder of his sentence. That same day, Donnelly also filed a motion to modify the sentence pursuant to CrR 7.8(b)(5). In this motion,

---

[2] In his response brief, Donnelly states: "Having entered the United States a few days prior to the stay on the parole permit that the Sheriff had obtained, Mr. Donnelly returned to Canada." Br. of Resp't at 6.

Donnelly sought an order requiring the sheriff to electronically monitor him "up to one month following completion of his work crew sentence so that he can complete his community service in the United States." Alternatively, Donnelly requested "that he be allowed to complete his community service in Canada."

On November 25, 2019, the State filed a memorandum opposing Donnelly's motion to modify the sentence. On November 26, the sheriff filed an answer to Donnelly's petition for a writ of mandamus in which the sheriff requested that the superior court dismiss the petition.

On December 10, 2019, the superior court heard both Donnelly's motion to modify the sentence and his petition for a writ of mandamus. During the hearing, the superior court denied Donnelly's petition for a writ of mandamus.[3] Also during the hearing, Donnelly's counsel withdrew his motion to modify the sentence and indicated that he would file a different motion following the hearing. Accordingly, the superior court did not rule on the motion to modify the sentence.

On January 6, 2020, Donnelly filed a motion to amend the warrant of commitment pursuant to CrR 7.8(b)(5). In this motion, Donnelly asserted that he was entitled to credit for time served at liberty with regard to the remainder of the sentence. Donnelly claimed that he was entitled to this form of equitable relief because the sheriff declined to apply for a second parole permit after Donnelly decided to depart the United States following the institution of his appeal in Donnelly, No. 77816-1-I.

---

[3] On May 11, 2020, the superior court entered a written order denying with prejudice Donnelly's petition for a writ of mandamus.

On February 5, 2020, the State filed a motion for a bench warrant. That same day, the State also filed a memorandum opposing Donnelly's motion to amend the warrant of commitment. In its memorandum, the State asserted that no new circumstances had arisen, since Donnelly filed his notice of appeal in Donnelly, No. 77816-1-I, that entitled him to credit for time served at liberty. The State also contended that the superior court lacked authority to modify Donnelly's sentence pursuant to CrR 7.8.

On February 28, 2020, the superior court heard both the State's motion for a bench warrant and Donnelly's motion to amend the warrant of commitment. On April 20, the superior court issued a letter decision on both of these motions. In this letter decision, the superior court concluded that it could review Donnelly's motion to amend the warrant of commitment pursuant to CrR 7.8(b)(5). The superior court also explained that Donnelly was entitled to credit for time served at liberty with regard to the remainder of the sentence. In so doing, the superior court reasoned as follows:

> I conclude that the equitable doctrine should be applied here and that Mr. Donnelly is entitled to credit, in equity, for time spent at liberty against the 44 days remaining on his sentence (30 of which were converted to 240 hours of community service). Where the Sheriff controls the ability for Mr. Donnelly to enter the country with a parole permit to serve the remainder of his sentence and chooses not to obtain the permit, it is inequitable to allow Mr. Donnelly to remain in limbo, with a sentence tolled that he cannot fulfill, perhaps indefinitely.

> The Court acknowledges that Mr. Donnelly made the choice to return to Canada, including after the hearing on December 12, 2017. However, given the specific facts here, the Court concludes that those choices do not qualify as his fault or contribution to the problem in the way that was foreseen and intended by the Court in

Roach.[4]  The initial choice to return home was with the permission of the Sheriff's Office and after Mr. Donnelly had done some due diligence with regards to his ability to re-enter the United States following conviction.  The second choice to return home was related to his choice to pursue his legal right of appeal.  It would not be appropriate for the Court to "punish" Mr. Donnelly for appealing or to conclude that his choice to appeal is equivalent to contributing to the problem at issue.  Further, the choice to return home and appeal was made with the expectation that the Sheriff would again seek a parole permit to allow him to serve his sentence, if necessary.

Also in this letter decision, the superior court denied the State's motion for a bench warrant.

On May 8, 2020, the State filed a motion to revise the letter decision.  In this motion, the State provided more complete information regarding the sheriff's willingness to apply for a second parole permit:

The Sheriff is willing to apply for a second Substantial Public Benefit Parole if the tracking requirements of the Homeland Security can be satisfied in a responsible and safe manner.  This will require that the sentence of the defendant be converted to all jail, as authorized by RCW 9.94A.731.  The Sheriff Deputy will meet the defendant at the border and take him to jail and return him to the border.  No additional penalties are proposed.  The duration of the original sentence remains unchanged.  A total of 44 days in county jail would be served.  Before being released to return to Canada the defendant will be given an opportunity to meet with an official with the Department of Corrections to arrange for their continued supervision.

Attached to the State's motion was a declaration of the sheriff, which provided support for the statement quoted above.  Also in this declaration, the sheriff provided numerous reasons why he was unwilling to apply for a second parole permit unless Donnelly was subject to total confinement.

---

[4] In re Pers. Restraint of Roach, 150 Wn.2d 29, 74 P.3d 134 (2003).

On May 11, 2020, the superior court held a presentation hearing. At the hearing, the superior court declined to revise its letter decision and stated that it would, after entering a final order, consider the State's motion as a motion for reconsideration. That same day, the superior court entered an order granting Donnelly's motion to amend the warrant of commitment. In this order, the superior court explained that it declined to consider the State's motion to revise the letter decision because "the letter decision did not have errors of fact based on the record before it when the letter decision was issued." However, the order provided that the superior court would "consider it as a motion for reconsideration, and the court has requested argument on the same."

On May 15, 2020, the State filed a memorandum in support of reconsideration. On May 26, the superior court heard the State's motion for reconsideration. On June 26, the superior court denied the motion.

The State appeals. Donnelly cross appeals.

II

We begin by clarifying the sentence that was imposed on Donnelly and the superior court's authority to enforce that sentence. The parties express the belief that Donnelly was sentenced to a term of 60 days of work crew and 30 days of community restitution. On remand from our first opinion in this matter, the superior court articulated a similar belief.[5] However, Donnelly was not sentenced to 60 days of work crew and 30 days of community restitution.

---

[5] For example, in its letter order denying the State's motion for reconsideration, the superior court stated that "the State has not established legal authority for the Sheriff or the Court *to convert* the 30 days of community service to jail time in order to allow Sheriff Krebs to supervise the Defendant under a parole permit as proposed." (Emphasis added.)

Rather, Donnelly was sentenced to "[a] term of *total confinement* in the custody of the county jail" for "3 months on Count I." (Emphasis added.) Donnelly was then *authorized* to satisfy that sentence of total confinement through a combination of both work crew service and community restitution.

With regard to work crew, the sentence provided that "[t]he defendant *may* serve the sentence, *if eligible and approved*, in partial confinement in . . . work crew" pursuant to RCW 9.94A.725. (Emphasis added.) When an offender is authorized to satisfy his or her sentence through work crew service, the term of total confinement remains the underlying sentence imposed by the court. Indeed, "[p]articipation in a work crew *is conditioned . . . upon* compliance with the rules of the program." RCW 9.94A.725 (emphasis added). Furthermore, if an offender fails to comply with the rules of work crew, the offender may be required, without further court order, to serve the remainder of his or her term of work crew in total confinement:

> An offender in a county jail ordered to serve all or part of a term of less than one year in . . . work crew . . . who violates the rules of . . . work crew . . . may be transferred to the appropriate county detention facility without further court order.

RCW 9.94A.731(2).

Next, regarding community restitution, the sentence provided that, pursuant to RCW 9.94A.680,

> 30 days of total confinement ordered above are hereby converted to 240 hours of community restitution (service) (8 hours = 1 day, nonviolent offenders only, 30 days maximum) under the supervision of the Department of Corrections (DOC) to be completed on a schedule established by the defendant's community corrections officer.

8

Under RCW 9.94A.680, the sentence of total confinement also remains the underlying sentence imposed by the court. Indeed, this statute provides:

> Alternatives to total confinement are available for offenders with sentences of one year or less. These alternatives include the following *sentence conditions* that the court may order as substitutes for total confinement:
>
> . . .
>
> (2) In addition, for offenders convicted of nonviolent offenses only, eight hours of community restitution may be substituted for one day of total confinement, with a maximum conversion limit of two hundred forty hours or thirty days. *Community restitution hours must be completed within the period of community supervision or a time period specified by the court, which shall not exceed twenty-four months, pursuant to a schedule determined by the department.*

RCW 9.94A.680 (emphasis added).

As the statute makes clear, an express condition of community restitution is that it be completed within a period that "shall not exceed twenty-four months." RCW 9.94A.680. When an offender fails to satisfy this condition of community restitution, two foundational provisions of Title 2 RCW authorize the superior court to enforce its underlying sentence of total confinement. Indeed, RCW 2.28.010(4) provides that "[e]very court of justice has power . . . [t]o compel obedience to its judgments, decrees, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein." Likewise, RCW 2.28.060(2) states that "[e]very judicial officer has power . . . [t]o compel obedience to his or her lawful orders as provided by law."

Here, Donnelly failed to satisfy the conditions of both work crew and community restitution. On November 1, 2017, the sheriff informed Donnelly that he had been terminated from the work crew program for his failure to report to work crew. Because Donnelly failed to report to work crew, the sheriff was

9

statutorily authorized to transfer Donnelly "to the appropriate county detention facility without further court order" so that Donnelly could satisfy the remainder of his term of work crew in total confinement. RCW 9.94A.731. Furthermore, Donnelly did not satisfy the additional 30 days remaining on the sentence through community restitution within 24 months, which was a condition of community restitution required by statute.[6] See RCW 9.94A.680(2). Therefore, the superior court was authorized to enforce the underlying sentence of total confinement with regard to these 30 days. See RCW 2.28.010(4); RCW 2.28.060(2).

To be clear, community restitution days were not being "converted" to jail time, as the superior court judge expressed. Rather, the sentencing condition of completing community restitution within 24 months was not met. Thus, the judgment requiring 30 days of incarceration was not satisfied by timely community restitution performance. Enforcement of the underlying sentence is allowable.[7]

---

[6] Donnelly was sentenced on April 28, 2017. On December 12, 2017, the superior court entered its order staying Donnelly's sentence pending his appeal in Donnelly, No. 77816-1-I. This order provided that the "execution of the *work crew portion* of Mr. Donnelly's sentence [is] STAYED pending appeal." (Emphasis added.) Additionally, the order clarified that "[t]his order *does not* stay Defendant's sentence relating to his *community service . . . obligations.*" (Emphasis added.) In other words, Donnelly's obligations with regard to the portion of his sentence that was authorized to be satisfied through community restitution was unaffected by this order. Therefore, more than 24 months elapsed between the sentencing date and October 24, 2019, when the State filed its motion in superior court for an order requiring Donnelly to appear and complete his sentence (the first action taken by either party after remand).

[7] Because community restitution is a condition of the sentence, the defendant must satisfy the condition to receive its benefit. If, at any point following the imposition of sentence, the superior court enters an order finding that the condition has not, will not, or cannot be satisfied, the execution of the underlying term of confinement is warranted.

III

We next address whether the superior court erred by declining to consider the declaration of the sheriff, which contained information regarding the sheriff's willingness to apply for a second parole permit. Despite the significance of this information, the superior court ruled that, pursuant to CrR 7.8, it could not consider the declaration. However, the superior court's reasoning fails to recognize that the nature of the proceeding before it was an action to enforce a judgment and sentence. Indeed, on October 24, 2019, the State filed a motion wherein it sought an order requiring Donnelly to appear and complete the remainder of the sentence. Donnelly's motion to amend the warrant of commitment, in which he sought equitable relief from serving the remainder of the sentence, was filed in response to the State's motion to enforce the sentence. As already explained, the superior court was vested with the statutory authority to enforce its judgment and sentence. The most important information for the court to acquire was what, exactly, the sheriff was willing to do and what was the sheriff's reasoning behind his decision. The superior court abused its discretion by choosing to ignore this information at a stage of the proceeding at which it still had time and statutory authority to enforce its judgment and sentence.

IV

We next discuss the process by which a Homeland Security parole permit may be issued and whether the sheriff herein lawfully declined to apply for a

11

second parole permit unless Donnelly was required to serve the remaining portion of his sentence in total confinement.

Federal law provides that the United States Attorney General "may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). This statutory provision has been interpreted to "provide[] the Secretary of Homeland Security discretion to parole any foreign national applying for admission into the United States temporarily for urgent humanitarian reasons or significant public benefit." PRIVACY IMPACT ASSESSMENT, supra, at 1.

"Parole is an extraordinary measure, sparingly utilized to permit an otherwise ineligible noncitizen to enter the United States for a temporary period due to an urgent humanitarian reason or for significant public benefit." 9 U.S. DEP'T OF STATE, FOREIGN AFFAIRS MANUAL § 202.3-2(A)(b). "[Significant public benefit parole] cases involve an individual whose presence is *necessary* in connection with legal cases or investigations, whether at the federal, state, local, or tribal level of government." 9 F.A.M. 202.3-3(B)(2)(c) (emphasis added). As such, "[p]arole should be a last option for individuals . . . [w]hose travel to the United States presents a significant public benefit." 9 F.A.M. § 202.3-3(B)(1)(c)(4). Finally, only a "law enforcement agenc[y]" is authorized to request a parole permit, and the law enforcement agency must make its request "through Department of Justice channels." 9 F.A.M. 202.3-3(B)(2)(c).

12

Once a parole permit is issued, the Department of Homeland Security

requires that the requesting law enforcement agency track the activities of the

parolee while the parolee is located in the United States:

> The requesting law enforcement agency is responsible for tracking the parolee's activities while in the United States and throughout the duration of the parole period, as well as for providing case updates to the Parole [and Law Enforcement Programs] Unit. This information (along with possible parole extensions, parole terminations, the date the parolee departs, and if the parolee absconds) is also updated in [the Parole Case Tracking System]. The requesting law enforcement agency provides a final update to the Parole Unit when the parolee has completed his or her parole, and the Parole Unit closes the case in [the Parole Case Tracking System] once the parolee's departure from the United States is confirmed.

PRIVACY IMPACT ASSESSMENT, supra, at 4.  Thus, as the requesting law

enforcement entity, the sheriff is required to be responsible for both the security

and behavior of the parolee during the parolee's time in the United States.

Before Donnelly filed his first appeal, the sheriff applied for a substantial

public benefit parole permit so that Donnelly could enter the United States to

serve the remainder of the sentence imposed on him.  That application was

granted on November 13, 2017.  The permit issued authorized Donnelly to enter

the United States on December 5, 2017.  At that point, Donnelly was perfectly

able to enter the United States on December 5, 2017, and complete his

sentence, as envisioned by the sentencing judge.[8]

After Homeland Security issued that parole permit, however, Donnelly filed

a motion in the superior court wherein he complained that, if he were required to

---

[8] The sentencing judge has since retired.  On remand, all decisions were made by his successor judge.

13

serve the sentence at that time, he would "miss Christmas with [his] family." Donnelly also protested that, during the holiday season, the cost of rental housing in San Juan County would "be a great deal more expensive than the one [he] had for October and November." Finally, after Donnelly entered the United States on December 5, 2017, pursuant to the parole permit that the sheriff had obtained for him from Homeland Security, Donnelly chose not to serve the sentence as arranged by the sheriff. Rather, Donnelly filed a motion to stay the sentence, filed an ultimately meritless appeal, and returned to Canada.

In the declaration of the sheriff that was attached to the State's motion for revision, the sheriff stated that he would be willing to apply to Homeland Security for a second parole permit, but only if Donnelly was required to serve the remainder of the sentence in total confinement. The sheriff provided several reasons for this.

First, the sheriff stated that "Mr. Donnelly insists that he is entitled to service of his sentence as 'originally negotiated.' He has been terminated from the Work Crew program and therefore should serve the remainder of his sentence in jail."

Second, the sheriff explained that,

because Homeland Security requires me to track the parolee, I am unwilling to apply for a second [parole permit] that would include conditions such as those that were imposed before, regarding work crew, days off, and monitoring with an ankle bracelet. We do not have ankle bracelet monitoring 24/7, therefore this . . . form of tracking is not acceptable to me.

Third, the sheriff stated:

14

I must also add that I am not happy that I applied for a [parole permit] with the expectation that Mr. Donnelly would serve his sentence and he declined to remain in San Juan County to make that happen. Yes, he had a right to appeal Judge Eaton's decision, but he also must face the consequence of his choice to return to Canada and its effect on his power to return to the United States to finish his sentence. The original substantial benefit parole was for a duration that extended into February 2018 which allowed him to complete all things required under the supervision of this office.

Finally, the sheriff explained:

I question the value or significant public benefit of multiple applications for accommodating a person for their business and personal desires without considering the need to accomplish the punishment ordered by Judge Eaton. Of course, the defendant is entitled to serve his sentence, but in his special status as a parolee he does not have a right to do it in pieces and return home as needed for personal reasons. Finally, I questioned the substantial public benefit for a person who voluntarily returned to Canada after first parole was granted for the purpose of completing his sentence. The defendant has shown to me that he has a propensity to say one thing and do another, which creates an unacceptable risk for me as the head of the "requesting law enforcement agency" who takes on tracking requirements of the Department of Homeland Security.

Given Donnelly's behavior after the sheriff convinced Homeland Security to issue the first parole permit on November 13, 2017, the sheriff expressed that, in essence, he now believed that Donnelly was not a sincere person who truly desired to serve his sentence and pay his debt to society (as he first believed) but, rather, was an insincere person who was dedicated to avoiding as much punishment as possible by any means available. As a result of this change of perception, the sheriff expressed the reasonable belief that Donnelly would not be a secure prisoner if he was not subject to total confinement. In short, the sheriff's view of Donnelly's security risk had changed based on Donnelly's own behavior. Especially considering the fact that Donnelly had engaged in a violent

15

criminal act in the United States, the sheriff's evaluation of his security risk was an important fact that the superior court erred by ignoring.

The sheriff was entitled to decline to apply for a second parole permit unless Donnelly was to be subject to total confinement. In making this determination, he acted within the discretion afforded him as an elected public safety official.

V

Having clarified the authority of the superior court to enforce its judgment and sentence and the circumstances under which the sheriff was willing to apply for a second parole permit, we now turn to the merits of the State's challenge on appeal. The State contends that the superior court erred by awarding Donnelly credit for time served at liberty. Because no circumstances arose after our first decision in this matter that entitle Donnelly to this form of equitable relief, we agree.

Our Supreme Court has made clear the conditions that an applicant must meet in order to be entitled to credit for time served at liberty:

> [A] convicted person is entitled to credit against his sentence for time spent erroneously at liberty due to the State's negligence, provided that the convicted person has not contributed to his release, has not absconded legal obligations while at liberty, and has had no further criminal convictions.

In re Pers. Restraint of Roach, 150 Wn.2d 29, 37, 74 P.3d 134 (2003).

In our first opinion in this matter, we held that, under the then-existing facts, Donnelly was not entitled to credit for time served at liberty. Donnelly, No. 77816-1-I, slip op. at 11. Therefore, only circumstances arising after our decision

in that opinion could apply to qualify Donnelly for this form of equitable relief. See Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) ("'It is . . . the rule that questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" (quoting Adamson v. Traylor, 66 Wn.2d 338, 339, 402 P.2d 499 (1965))).

After the sheriff obtained the parole permit that authorized Donnelly's entry into the United States on December 5, 2017, the sole reasons why Donnelly did not serve the remainder of the sentence were the consequence of his own actions. First, Donnelly sought a stay of the sentence and, thereafter, departed the United States. The State opposed Donnelly's motion to stay the sentence. As such, Donnelly's failure to serve the sentence when arranged by the sheriff and permitted by Homeland Security was the result of his own conduct. Furthermore, because the State opposed the motion to stay the sentence, Donnelly's inability to reenter the United States after he returned to Canada was not the result of the State's negligence.

Second, Donnelly departed the United States after he decided to pursue a meritless appeal. See Donnelly, No. 77816-1-I. In that appeal, the State again opposed Donnelly. See Donnelly, No. 77816-1-I. Therefore, Donnelly's own decision to file a meritless appeal contributed to his inability to reenter the United States to serve the remainder of the sentence. Moreover, because the State

opposed Donnelly's first appeal in this matter, Donnelly's inability to reenter the United States was, again, not in any way the result of the State's negligence.

In any event, Donnelly was never *released* from serving the sentence. As we explained in Donnelly, No. 77816-1-I at 10, "[t]he trial court . . . correctly ruled that Donnelly was not released from his obligation to serve the sentence imposed on him by the superior court." Instead, Donnelly was terminated from the work crew program after he failed to report. Donnelly, No. 77816-1-I at 9-10. Additionally, Donnelly did not satisfy the statutory condition of community restitution that it be completed within 24 months. See RCW 9.94A.680(2). Accordingly, Donnelly remains subject to the underlying sentence of total confinement that was imposed by the superior court.

Following our decision in Donnelly, No. 77816-1-I, the superior court ruled that Donnelly was entitled to credit for time served at liberty for several reasons. First, the superior court reasoned:

> Where the Sheriff controls the ability for Mr. Donnelly to enter the country with a parole permit to serve the remainder of his sentence and chooses not to obtain the permit, it is inequitable to allow Mr. Donnelly to remain in limbo, with a sentence tolled that he cannot fulfill, perhaps indefinitely.

Contrary to the superior court's reasoning, the sheriff explained in his declaration that he was willing to apply for a second parole permit, but only if Donnelly was required to serve the remainder of the sentence in total confinement. As already explained, the sheriff acted well within his discretion to decline to apply for a second parole permit unless Donnelly was subject to total confinement. With regard to the portion of Donnelly's sentence that was

18

originally authorized to be satisfied through work crew, the sheriff had the authority to transfer Donnelly "to the appropriate county detention facility without further court order." RCW 9.94A.731(2). Furthermore, and contrary to the superior court's understanding, once the 24-month statutory period expired, the superior court had the authority to deem the community restitution sentencing condition not met and order Donnelly to serve in total confinement the remaining term of the sentence.

Next, the superior court concluded that Donnelly was not at fault for returning to Canada before he was *initially* denied entry into the United States:

> The initial choice to return home was with the permission of the Sheriff's Office and after Mr. Donnelly had done some due diligence with regards to his ability to re-enter the United States following conviction.

However, this reasoning directly contradicts our first opinion in this matter:

> Donnelly's predicament was not the result of negligence by the State. To the contrary, he executed a guilty plea statement in which he acknowledged that he understood the possibility that his conviction could render him excludable from the United States. Nevertheless, he exercised *no diligence* in discerning whether he would be able to enter the United States, when necessary to do so to comply with the requirements of his sentence.

Donnelly, No. 77816-1-I, slip op. at 12 (emphasis added). On remand, the superior court was without authority to set aside our expressed judgment and substitute its own view of the matter. It erred by so doing.

Finally, the superior court reasoned that Donnelly could not be disadvantaged as a result of pursuing a meritless appeal:

> The second choice to return home was related to his choice to pursue his legal right of appeal. It would not be appropriate for the Court to "punish" Mr. Donnelly for appealing or to conclude that his

choice to appeal is equivalent to contributing to the problem at issue.

The superior court was wrong to so reason. Litigants often find themselves in worse positions after filing an unsuccessful appeal. For example, in civil cases, appellants have been required, following an unsuccessful appeal, to either pay the opposing party's attorney fees or fulfill their obligations pursuant to a supersedeas bond. See, e.g., TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 214-15, 165 P.3d 1271 (2007) (holding that respondent was entitled to an award of attorney fees on appeal from appellant); Holmquist v. King County, 192 Wn. App. 551, 558, 368 P.3d 234 (2016) ("Washington courts follow the established rule that once an appeal has failed, the supersedeas obligor's 'liability for damages . . . is *absolute*.'" (alteration in original) (quoting John Hancock Mut. Life Ins. Co. v. Hurley, 151 F.2d 751, 755 (1st Cir. 1945))).

Likewise, in criminal cases, defendants have, upon remand from an appeal, been resentenced with higher offender scores as a result of an intervening conviction. See, e.g., State v. Collicott, 118 Wn.2d 649, 668-69, 827 P.2d 263 (1992). Additionally, nonindigent criminal defendants have been required to pay court costs for an unsuccessful appeal. See, e.g., State v. Gonzales, 198 Wn. App. 151, 155-56, 392 P.3d 1158 (2017). Cases are legion in which a party—in either a civil or criminal matter—is worse off for pursuing a meritless appeal. There is nothing unjust or unusual about this outcome.

Donnelly decided to depart the United States after filing what proved to be a meritless appeal. Thus, he alone contributed to his inability to reenter the

United States, after remand, to serve the remainder of the sentence. It is of no consequence that he now finds himself in a worse position after filing the unsuccessful appeal. Most importantly, the State in no way contributed to Donnelly's decision to act in this way.

Accordingly, the superior court erred by granting Donnelly's motion to amend the warrant of commitment.[9]

VI

On cross appeal, Donnelly asserts that the superior court erred by denying his petition for a writ of mandamus to compel the sheriff to apply for a second parole permit. Because the sheriff did not have a clear duty to apply for a parole permit, we disagree.

"[M]andamus is an extraordinary writ." Mower v. King County, 130 Wn. App. 707, 718, 125 P.3d 148 (2005).[10] Indeed, "[a] party seeking a writ of mandamus must show that (1) the party subject to the writ has a clear duty to act; (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the petitioner is beneficially interested." Seattle Times Co. v. Serko, 170 Wn.2d 581, 588-89, 243 P.3d 919 (2010) (citing RCW 7.16.160, .170)).

---

[9] The State also contends that the superior court erred by ruling that Donnelly's motion to amend the warrant of commitment was timely. According to the State, Donnelly's motion was untimely under RCW 10.73.090 because it amounted to a collateral attack on the judgment and sentence and was filed more than one year after the judgment became final. We disagree.

The issue before the superior court was the enforcement of a judgment and sentence. Donnelly's motion to amend the warrant of commitment did not amount to a collateral attack on the judgment and sentence. Instead, this motion merely sought a means by which Donnelly's sentence could be satisfied in equity. Therefore, the one-year time constraint under RCW 10.73.090 did not apply to Donnelly's motion to amend the warrant of commitment.

[10] We review de novo a trial court's decision regarding the issuance of a writ of mandamus. Mower, 130 Wn. App. at 719.

"The duty to act must be ministerial in nature rather than discretionary." Seattle Times Co., 170 Wn.2d at 589. Moreover, "'[w]here the law prescribes and defines the duty to be performed with such precision and certainty *as to leave nothing* to the exercise of discretion or judgment, the act is ministerial.'" SEIU Healthcare 775NW v. Gregoire, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (internal quotation marks omitted) (quoting State ex rel. Clark v. City of Seattle, 137 Wash. 455, 461, 242 P. 966 (1926)). Accordingly, "mandamus can direct an officer or body to exercise a mandatory discretionary duty, but not the manner of exercising that discretion." Mower, 130 Wn. App. at 719.

Donnelly contends that, pursuant to the following statute, the sheriff was required to apply for a parole permit so the Donnelly could reenter the United States to complete the remainder of the sentence:

> When any person shall be sentenced to be imprisoned in the penitentiary or county jail, the clerk of the court shall, as soon as may be, make out and deliver to the sheriff of the county, or his or her deputy, a transcript from the minutes of the court of such conviction and sentence, duly certified by such clerk, which shall be sufficient authority for such sheriff to execute the sentence, who shall execute it accordingly.

RCW 10.70.020.

By its terms, this statute applies when a person is sentenced to be imprisoned in total confinement. The sheriff made clear in his declaration that, if Donnelly was ordered to serve the remainder of his sentence in total confinement, he was willing to both apply for a second parole permit and undertake the tracking requirements imposed by the Department of Homeland Security. In any event, nothing in RCW 10.70.020 imposes a clear duty on

behalf of the sheriff to apply to the Department of Homeland Security for a parole permit.

Accordingly, Donnelly's assignment of error fails.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_Dwyer, J._

WE CONCUR:

_Verellen, J._          _Appelwick, J._